# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: October 26, 2020

```
* * * * * * * * * * * * * * * * * * * * * * * * *
DIANE R. HECHT,                    *
                                   *      UNPUBLISHED
              Petitioner,          *
                                   *      No. 19-387V
v.                                 *
                                   *      Special Master Nora Beth Dorsey
                                   *
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *      Finding of Fact; Onset; Influenza ("Flu")
                                   *      Vaccine; Shoulder Injury Related to
              Respondent.          *      Vaccine Administration ("SIRVA").
                                   *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Matthew F. Belanger, Faraci Lange, LLP, Rochester, NY, for petitioner.
Camille M. Collett, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON FACTS[1]

On March 13, 2019, Diane R. Hecht ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2012).[2] Petitioner alleged that she suffered a left shoulder injury as the result of an influenza ("flu") vaccination she received on September 26, 2016. Petition at 1 (ECF No. 1).

---

[1] Because this Ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012). All citations in this Ruling to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

1

Prompting this fact ruling is Respondent's Rule 4(c) Report, filed May 7, 2020, in which respondent asserted that the petitioner had not "submitted independent objective evidence" establishing that onset of petitioner's pain "was within 48 hours of vaccination." Respondent's Report ("Resp. Rept.") at 4 (ECF No. 29). Thereafter, a status conference was held during which the parties agreed to a fact hearing to determine the onset of petitioner's shoulder injury. Order dated May 19, 2020 (ECF No. 30). A fact hearing was held on October 6, 2020.

After a review of the record as a whole, testimony given at the fact hearing, and for the reasons set forth below, the undersigned finds by preponderant evidence that the onset of petitioner's shoulder injury occurred within 48 hours of her flu vaccination.

## I.    PROCEDURAL HISTORY

On March 13, 2019, petitioner filed a petition for compensation alleging a left shoulder injury related to vaccination ("SIRVA") as the result of her September 26, 2016 flu vaccination. Petition at 1. Petitioner filed medical records shortly thereafter. Petitioner's Exhibits ("Pet. Exs.") 1-10. This case was reassigned to the undersigned on October 7, 2019. Notice of Reassignment dated Oct. 7, 2019 (ECF No. 14). Petitioner subsequently filed additional medical records on October 18, 2019. Pet. Exs. 11-12.

On May 7, 2020, respondent filed his Rule 4(c) Report arguing petitioner was not entitled to compensation because she had not "submitted independent objective evidence" establishing that onset of petitioner's pain "was within 48 hours of vaccination." Resp. Rept. at 4. After a status conference on May 19, 2020 and party conversations about appropriate hearing dates, the parties scheduled a fact hearing for October 6, 2020. See Order dated May 19, 2020 (ECF No. 30); Joint Status Rept., filed Sept. 4, 2020 (ECF No. 43). Prior to the hearing, petitioner filed affidavits. Pet. Exs. 13-14.

## II.    ABREVIATED MEDICAL HISTORY

Petitioner is currently 55 years old and is employed as nurse practitioner at a skilled nursing facility in Rochester, New York. Pet. Ex. 5 at 1; Pet. Ex. 13 at ¶ 2. Prior to her flu vaccination on September 26, 2016, she had no prior medical history of left shoulder injury or problem. Pet. Ex. 1 at ¶ 4; Transcript ("Tr.") 30. She received her flu vaccine on September 26, 2016, in her left shoulder. Pet. Ex. 2 at 1.

The medical records first document that petitioner experienced symptoms in her left shoulder on March 9, 2017, when she saw Dr. Michael Bibighaus with complaints of left shoulder pain. Pet. Ex. 3 at 1. Dr. Bibighaus' differential diagnosis included possible rotator cuff injury, bursitis, or muscle strain. Id.

On August 24, 2017, petitioner saw orthopedist, Dr. Michael Yip, with complaints of left shoulder pain and decreased range of motion ("ROM") which she related the onset of her shoulder pain back to her prior flu shot. Pet. Ex. 4 at 16-17; Pet. Ex. 5 at 5. At this visit petitioner also stated her shoulder pain began approximately ten to eleven months earlier. Pet. Ex. 4 at 17; Tr. 52. Petitioner indicated her pain was 8/10 at its worst. Pet. Ex. 4 at 17. The pain

was aggravated by reaching, overhead lifting, and behind the back movements and she had difficulty with activities of daily living such as dressing. Id. Exam showed negative Neer and Hawkins impingement signs. Id. X-rays were unremarkable. Id. at 16. The impression was adhesive capsulitis of left shoulder. Id. Dr. Yip recommended conservative treatment of oral anti-inflammatories, activity modification, and physical therapy ("PT"). Id. Dr. Yip suggested a follow up appointment in three months with consideration of a joint injection if petitioner was not better. Id.; Pet. Ex. 5 at 3-7.

On September 7, 2017, petitioner began PT with Judith Morale, PT, DPT, for adhesive capsulitis. Pet. Ex. 7 at 1; Tr. 44. Petitioner described an insidious onset of pain approximately one year prior. Pet. Ex. 7 at 1. She reported her pain was constant at a level of 3/10 to 8/10 and was aggravated by driving, donning/doffing her bra, and shaving her left axilla. Id. at 1-2. Petitioner indicated the pain disturbed her sleep three to four times per night. Id. at 1. An exam showed limited ROM and weakness in several movements. Id. at 1-2. Petitioner attended PT twenty-nine times with her last visit taking place on June 18, 2018. See Pet. Ex. 7; see also Pet. Ex. 8. At that time of her last visit, petitioner was noted to be functioning well with minimal symptoms and she had met her goals. Pet. Ex. 8 at 235.

Petitioner returned for her follow-up appointment with Dr. Yip on September 15, 2017. Pet. Ex. 5 at 1-2. Petitioner complained of pain at night despite attending PT as well as home stretching and requested a steroid injection. Id. at 1. On exam, Dr. Yip's impression of left shoulder adhesive capsulitis remained unchanged. Id. at 2. Dr. Yip administered a glenohumeral joint injection and petitioner reported immediate pain relief. Id.

On October 9, 2017, petitioner saw Dr. Valerie Newman, her primary health provider, for a preventative health visit. Pet. Ex. 4 at 5. Dr. Newman noted petitioner's diagnosis of adhesive capsulitis of the left shoulder. Id. A flu vaccine was administered at this visit. Id. at 10.

### III. TESTIMONY

Ms. Pamela Rhoden testified during the hearing on October 6, 2020. Ms. Rhoden is the employee Health and Wellness Coordinator at St. John's nursing home where she and petitioner currently work in their respective capacities. Tr. 6. Ms. Rhoden stated that after about a week after her September 26, 2016 flu shot, petitioner came to her office to complain of arm pain. Tr. 9. Ms. Rhoden said she next saw petitioner in April 2017 for an annual health assessment and noted petitioner continued to have arm pain and was going to PT. Tr. 11-12.

Mr. Robert Hecht, petitioner's husband, also testified at the hearing. Mr. Hecht recalled the evening after petitioner's vaccination, petitioner questioned the site of injection. Tr. 22. Mr. Hecht reported petitioner said the pharmacist hit the shoulder high up in the joint versus into the deltoid muscle which gave her immediate pain. Id. He stated petitioner complained of pain for months after the vaccination. Tr. 23.

Petitioner testified she felt immediate pain after the injection was given. Tr. 34. She stated she visited Ms. Rhoden a few days after the vaccination to report her pain and then contacted a telemedicine health care provider in March due to worsening shoulder symptoms.

Tr. 36.  When asked why she waited so long to get treatment she responded, "[b]eing a nurse practitioner, I knew what a healthcare professional would say about treating."  Tr. 36-37.  Instead, petitioner self-treated with heat, ice, ibuprofen, Tylenol.  Tr. 37.  Petitioner stated that when she did call a provider about worsening pain, he said to continue what she was doing.  Tr. 38.

## IV.   PARTIES' CONTENTIONS

In her affidavit, petitioner alleged she received her annual flu shot from a Wegmans' pharmacist on September 26, 2016.  Pet. Ex. 13 at ¶ 4.  As he placed the needle in her left shoulder, she saw it was just under her AC joint rather than in her deltoid muscle.  Id.  She averred she "felt an immediate deep pain in [her] left shoulder that was more severe that the post-injection pain [she] had had in the past."  Id. at ¶ 5.  Over the next 48 hours petitioner had a constant ache in her shoulder and after a few weeks the pain ranged from 4-5/10.  Id. at ¶ 7-8.  Petitioner told her Health and Wellness Coordinator, Pamela Rhoden, about her pain when she was reaching over her head and behind her back.  Id. at ¶ 8.  Petitioner stated that because she is "a trained nurse practitioner, [she] chose not to seek outside medical care at that time, but rather to take the conservative measures [she] would have advised a patient . . . with similar symptoms."  Id. at ¶ 9.  After a few months of conservative measures that did not alleviate her left shoulder pain or loss of motion, she used her employer's telemedicine program on March 9, 2017 to contact a doctor.  Id. at ¶ 11.  She then decided to see an orthopedist specializing in shoulder pain on August 24, 2017.  Id. at ¶ 12.

In his Rule 4(c) Report, respondent argued that petitioner was not entitled to compensation.  Resp. Rept. at 1.  Respondent argued that petitioner "ha[d] not submitted independent objective evidence that specifically establishes that the onset of her pain occurred within 48 hours of vaccination" as required for SIRVA injuries.  Id. at 4; see 42 C.F.R. § 100.3(c)(10).  Respondent contended that while petitioner's affidavit asserts that she felt pain immediately after injection, her claims are not corroborated by contemporaneous medical records, nor did she seek treatment for her shoulder pain for almost six months.  Id. at 4.

## V.   DISCUSSION

### a.   Applicable Legal Standard

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim.  13(a)(1)(A).  To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony.  See Burns v. Sec'y of Health & Hum. Servs., 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records).  Contemporaneous medical records are presumed to be accurate.  See Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).  To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling."  Sanchez v. Sec'y of Health & Hum. Servs., No. 11-0685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013)

(citing Blustein v. Sec'y of Health & Hum. Servs., No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

### b. Evaluation of the Evidence

At the conclusion of the proceeding, the undersigned informed the parties that she intended to issue a ruling from the bench. See Tr. 56-57. Both parties agreed to this proposed action. Id. After a short recess, the undersigned returned and read her ruling into the record. Tr. at 57-60.

The undersigned stated that the issue to be resolved was a determination of onset of petitioner's symptoms of left shoulder pain. Tr. 57. With regard to the onset of symptoms, the undersigned found that petitioner experienced pain "at the time of her vaccination and that she continued to have pain for the next 48 hours and then continued to have pain consistent with her testimony today." Id. The reasons for the ruling are set forth in the transcript from the hearing at pages 57 to 60, and incorporated herein by reference as if fully set forth.

## VI. CONCLUSION

The undersigned finds, based on the record as a whole, that the onset of petitioner's symptoms occurred within 48 hours of petitioner's flu shot on September 26, 2016.

The following is **ORDERED**:

Respondent shall file an Amended Rule 4(c) report, reflecting the Fact Ruling, in forty-five (45) days, or **by Thursday, December 10, 2020**.

**IT IS SO ORDERED.**

                                                   s/Nora Beth Dorsey
                                                   Nora Beth Dorsey
                                                   Special Master